We will hear argument this morning in Case 14-378, McFadden v. United States. Mr. Russell? Mr. Chief Justice, and may it please the Court, the briefing in this Court has narrowed considerably the disagreement among the parties. We now all agree that the Fourth Circuit misconstrued the mens rea element for a criminal offense under the Controlled Substance Analog Act. And we further agree that the jury instructions actually given in this case were erroneous. Instead, we and the government now agree that to prove an offense, the government must show that the defendant knowingly distributed an analog. And we further agree that the government may do that by showing that the defendant knew that the substance in question had the characteristics that made it an analog under the statute. Where we may disagree is over the government's alternative theory, that it can instead show that the defendant knew that the substance was illegal or regulated. If all the government means by that is illegal or regulated under the statute of conviction, the Controlled Substances Act itself, we would agree. But the government would simply lose, because as it's acknowledged, the evidence in this case tended to show that my client did not believe that his conduct violated the CSA itself. But just to make sure I understand all that you're agreeing on, you do agree that if the defendant knew that the substance was illegal under the Controlled Substances Act or the Analog Act, even though the defendant didn't know the chemical structure or the particular effects, say that the dealer had handed him a box and said, this is our new analog, which is illegal under the Analog Act, you agree that that is sufficient for a conviction? We do agree with that. And I think that that is simply a special application of the general rule, that the defendant has to know the facts that make his conduct unlawful. Because he knows in that circumstance the only fact he needs to know in order to know that what he's doing is legal. That sounds sensible to me. What about the expert testimony from chemists? Is that still put on in the trial? Does the government still have to show, put on an expert to say, well, this is chemically modified, but it's substantially similar, and the jury sits there knowing that it doesn't have to listen to this? I mean, how does that work? They do have to show that because the government still has to prove that it is, in fact, analog. They have to both show that the defendant knows. Well, but does the jury have to understand the chemical testimony? They've got to make the determination that it is, in fact, chemically substantially similar. I acknowledge that that's a lot to ask of a jury. It's a lot to ask of a defendant to understand that. But it is the government's burden to show both composition in relation to the constrolled substance and the effect of the drug. Those the government must prove. But what we have out of the way is that the defendant now doesn't have to know. You agree the defendant doesn't have to understand the chemical structure? He doesn't have to understand the chemical structure if the government can prove that the defendant knew that the substance was illegal under the Controlled Substances Act itself. Well, the government has given up a lot getting to this point, and I think you've just given up a lot. I would have thought your position that you have to know that it's regulated under the chemical substances or Controlled Substances Act, it seems to me, is contrary to the proposition that ignorance of the law is no excuse. If you didn't know, I didn't know this was regulated, you would say he's innocent because he didn't know the law. I thought your position was that you do have to know, as in all the other cases in the mens rea area, the facts that make your conduct illegal. You don't have to know that it's illegal. That is certainly our principal position. We are willing to say, however, that either whether you consider it a special exception to that rule or a special application to that rule, if the government can show that the defendant knows that the substance is illegal under the statute of conviction, that serves the basic purpose of the knowledge of fact requirement, which is simply to say that he's innocent. And if he doesn't know he's innocent, if he's ignorant of that law, he's not guilty. Well, he's not guilty unless the government can show that he knows that the substance has the characteristics of an analog, in which case his ignorance of the law is not an excuse. So the government has two options. It can prove the facts, the factual knowledge, in the way that this Court described in Staples and has applied in other cases involving prohibited items. But we're willing to acknowledge that if they can, instead of that, show that he knew that this is illegal under the statute, that's good enough because Kagan. And I take it that's the same as under the Controlled Substances Act itself. Is that right? That's the analogy? Is that you can either show the person knew it was heroin, or you can show, well, the person didn't know it was heroin, but the person did know that it was some drug that was on Schedule I of the — of — of, in so a controlled substance. That's right. And why we disagree with the government is that it construes some of the lower court cases that say that, as saying the broader thing, which is — I'm sorry. It's beyond the sense. You keep saying — and knowing that it's illegal under the Act. He doesn't have to know the Act. He just has to know it's illegal, that some law regulates it. Otherwise, he's not going to know what the number of the law is or the Controlled Substance Act. Well, let me be clear. When I say — I mean, criminals don't care. They just know that this is — they may think it's something. They just know it's a controlled substance. No. I would disagree with that, and I think that's the principal disagreement we have with the government here, is that it's not enough to show that the defendant thinks that it's illegal generally or that it's unlawful under an import statute or State law. Right. The government would say if he's selling it without paying the sales tax, he knows that that's illegal. That's enough to convict him under the Controlled Substances Act. Potentially. I think that may be their argument. You know, so we give the example in our brief of somebody who knows he's selling Cuban cigars in violation of an import ban. He knows in that case that it's an illegal or controlled substance, but that knowledge doesn't equate — you wouldn't say that somebody in that case knows he's selling a controlled substance simply because it turns out, unbeknownst to him, that the cigars have marijuana in them. That's not the way that you would use the English language. You wouldn't say that he knowingly sold marijuana or even that he knowingly sold a controlled substance. Let's take a case involving a drug that isn't an analog, a drug that's actually listed, and let's say the facts are these. The distributor gives it to the person who's going to make the distribution and says, this is an illegal drug, go distribute it. And the person then goes and distributes it and tries to evade law enforcement and so forth, is caught. Now, is it — is that sufficient? Is that evidence sufficient to take the case to the jury so the jury can find — the jury can decide whether there's circumstantial evidence that the person who distributed the drugs knew that it was a controlled substance under Federal law as opposed to one of the few things that is illegal under State law but not under Federal law? Yes. I think that's sufficient evidence to go to the jury. The jury then has to decide whether to make that inference. And in a case like this where the defendant puts on countervailing evidence that he, in fact, didn't believe it violated Federal law, or when the defendant is able to explain, yes, I thought it was illegal because I thought it was in violation of an import statute, then it's up to the jury to decide whether to believe that. But if it does, then it ought to conclude that mens rea wasn't established unless the government can show that the defendant knew the characteristics of the substance that made it an analog. Suppose the supplier tells the dealer, this substance produces exactly the same effect as cocaine. Would that be enough to satisfy the mens rea requirement? It wouldn't be enough to satisfy it.  I think that's sufficient evidence to go to the jury to decide whether or not the defendant knew that it was a controlled substance under Federal law. I don't think that they should. I think it's only partial evidence. You say he has to know the chemical makeup that causes it to be an analog, right? He either has to know that or he has to know that it violates the statute. I understand. Let's assume he doesn't know that it violates the law. He also doesn't know that it what the chemical makeup is, but he knows what it is. It is MVD-3. That's all he knows. Now, under the Controlled Substances Act, that would be enough. He wouldn't have to know the makeup of it. He would just have to know it's one of the named controlled substances. If, indeed, MVD-3 is an analog, why isn't that enough, that he just knows what it was and what it was is an analog? Right. I think that's parallel to somebody knowing that he has an AR-15 rifle, which is, in fact, a machine gun. In Staples, this Court said that's not enough. You need to know the facts about the gun that make it an analog, which isn't its name or which make it a machine gun, which isn't its name. Here, it's not enough. But this isn't a rifle. This is, in fact, an analog of a controlled substance. It's not a proper comparison. He knows that it is — he knows the identity of it, and that chemical has, in fact, the characteristics that make it an analog. He knows — knowing simply the name of it doesn't tell you whether it's an analog or not. You don't know that it's an analog simply because you know the name. And the way that you would— Scalia. And knowing that it's cocaine doesn't prove that you know it's a controlled substance. It does, though, because the only fact that you need to know about cocaine for it to be a controlled substance is that it is cocaine, because that's the fact that makes it illegal. It's listed on the Controlled Substance Act and on the Controlled Substance Schedules. So if it's cocaine, you know everything you need to know based on the presumption that you know the law to know that what you're doing is illegal. And that's not true. Suppose the distributor gives it to the person who's going to distribute it and says, here, distribute this, and there's the actual chemical formula on the container. And it's the chemical formula, excuse me, for PCP, whatever that is, C something, H something, N. So that's all a person knows. He knows exactly what it is, the chemical formula. Is that — has he not committed a crime then? Under the Ordinary Controlled Substances Act. Yes. I don't know. I mean, it depends, I think, on how it's listed in the schedule. I think the schedule might, in fact, list the chemical name. But if — It does list the chemical name. So then I think you do know the fact that that makes the conduct unlawful. But you don't know the person has just arrived, excuse me, from Mars and has no idea what, you know, whether it's legal or not. I think the basic assumption is that people know what the law is. They know what's in the schedules. And if you know what's in the schedule and if you know the fact, that's enough, I think, to convict. What do you do with the actual facts of this case? That is, the defendant gave names to what he was peddling. He called it Speed, New Up, a replacement for the listed — now listed MPPD. He — these were supposed to be bath salts, but there's no bath salts in the world that cost what those packets cost. So what — what do we make of what he was advertising this to be, Speed Up, and selling it at a price that fits a controlled substance? I think what it reflects, what a jury certainly could find it to reflect, and I think what the truth of the matter is, is that it shows that Petitioner thought he'd found a loophole to the Federal drug laws, that so long as something was not on the schedules, even if it had drug-like effects, he could sell it, and he could sell it at whatever price the market would bear. Certainly, the government can point to that kind of evidence to suggest that he knew that his conduct violated the Controlled Substances Act. But here, of course — But I thought you said that that kind of evidence was enough to get you to a jury. Yes. That the defendant acted furtively or that he sold these for incredibly inflated prices, that all of that, it's not — it's not the thing itself, but it's evidence of the thing that the government is trying to prove. That's right. And I think it gets to the jury, but it doesn't prove what the government has to prove here, which is harmless error beyond a reasonable doubt. But then, if I can just understand — I mean, I think — tell me if I'm wrong, that the only thing that's possibly separating you and the government — we'll see if it is separating you and the government — is this question of what happens if the defendant knew it was illegal under something other than the CSA or the Analog Act, right? And that's the only point of potential difference between you and the government? I think that's true with respect to our legal interpretation. I will say, we also think that you ought not to reach that because this entire regulated status theory was raised for the first time in the government's brief on the merits in this Court. Wait a minute. I mean, yes, you do differ with the government on that. Yes. But assuming that the government cannot prove any belief in illegality, the government would not say, it therefore must prove that you knew the chemical composition of what you were selling. And you say you have to know the chemical composition. Right. I think we're all on the same page. So just to be clear about our position, I think that the only disagreement about the meaning of the law between the government and us now is this question of whether it's sufficient as a matter of law for the government to show that the defendant believed that the substance was unlawful under some law other than the CSA. They think that's sufficient. We think it's not sufficient. Beyond that, though, that would be true. Okay. Assuming it's not sufficient, what else does the government have to prove? I think you differ on that. I don't think so. I think the government agrees that one way to prove the mens rea in this case is to show that the defendant knew the characteristics of the substance that made it an analog. They agree that they can do it that way. Which means the chemical composition? Yes. Yes. I understand that they would be taking that position. Okay. We'll see. And who would that reach other than the chemist, the underground chemist would be in a position to know that, but an ordinary person would not? I acknowledge that giving this statute what I think is a pretty straightforward and traditional reading does have the effect of making it substantially harder for the government to prove that mens rea for an ordinary layperson. Well, my understanding, well, the government will tell you, but my understanding of the government is it would be enough if the defendant knew the name, the name of the drug, whether it's Blue Fly or whatever else, and if, indeed, that drug has the chemical composition. I won't spend a question on looking it up. I'm pretty confident that that's not their position. Okay. That they've said the opposite. So suppose the Court instructs the jury that it suffices if the defendant knows that this is an illegal drug because of its hallucinogenic effect? I don't think — again, the critical question is illegal drug. If it — by that, you mean illegal drug under the CFS. No, if it's an illegal drug because of its hallucinogenic effect. Maybe that's incorrect because it has to be chemically the same, so that's incomplete. But it seems to me that should suffice for mens rea. Just to be clear, I think a court — Well, and then — and then it's shown that this is chemically similar. Right. I think that the Court would have to tell the jury that you can take into account the defendant's knowledge of its hallucinogenic effect in deciding whether he knew it was illegal under the Controlled Substances Act itself. And so what I'm quibbling with is just the unadorned word illegal. I don't think it would be sufficient if a jury was convinced that the defendant thought it's a hallucinogenic effect and it's illegal under State law. That's why it was acting furtively. I don't think that a jury could, if it believed that, find the mens rea established, unless, of course, it went under this factual knowledge prong. That's the ordinary way in which knowledge of unlawful possession of a prohibited item is proven. The instructions at page 14 of your brief, the brief in footnote 9, can you say that by adding just a sentence or two to the first paragraph? No, because — Or is it beyond hope or what? No, I think — recall that this is setting forth the elements. And so I think the element is that the defendant has to know that he's distributing an analog. And then there's questions about ways in which to prove that. And I think the jury — the Court could give an instruction of the sort that we proposed, which said that the defendant has to know that this is an analog within the meaning, has the characteristics that make it an analog within the meaning of the statute. Had the government asked for an instruction, it could have also given instructions that or the government can show that the defendant knew the conduct was unlawful generally and you can make that unlawful under the CSA itself. And you can reach that conclusion based on circumstantial evidence, including evidence concerning the defendant's knowledge about the drug's effect. But there's a world of difference between saying that this is relevant circumstantial evidence about whether the defendant knew that he was violating the statute of conviction and what the government's position is, which is once you prove that the defendant knows that it's illegal at all, you're done. And the jury is compelled to conclude that mens rea is established. And I think that that's simply wrong. I'm sorry to put you through this again, but it's important, I think, for me anyway, to get it right. I understand your understanding that the SG, this is a big difference, the SG says you have to know it's illegal under any law. You say no under the CSA. Now, what was the other way in which you disagree with the government? I think that's the only way in which we disagree about the meaning of the statute. No, but I thought that you were disagreeing about names and characteristics. Well, I was disagreeing with Justice Scalia. I don't think we're actually disagreeing with the government about that, because I think they have said in their brief, under the knowledge of identity approach, they have to show that the defendant knows the chemical structure and effects of the analog, because it's not enough to simply know its name. And so I don't think that we disagree with each other on that point. And so I don't think we disagree with each other on that point. Can I ask, Mr. Russell, about your difference as to whether it's under this statute or under any statute? If you look at some of the instructions that are given just under the CSA, not analogs, that some of the instructions just say that you need to find that the defendant knew that he was distributing some kind of prohibited drug. They don't say a drug prohibited under the CSA. So if we use that as the analogy here, that would suggest that the jury wouldn't need to find, you know, the analog prohibited under the CSA and the Analog Act, but just that they knew it was prohibited by something. All right. I think there is an ambiguity in those instructions, whether it's referring to unlawfulness generally or unlawfulness under the CSA. I think courts, what they really mean is under the CSA. And in the cases where the defendant has come forward and said, actually, I thought it was illegal under some other statute, in Hassan, and again in Hussein, and I believe the case of Morales, three of the seven cases the government cites for this proposition, the court has said, no, that's not good enough. And those are — and that makes complete sense. Now, it could be that in a lot of cases the government is going to present evidence that the defendant just thinks it's a controlled substance generally. And we agree that a jury can infer, absent other evidence, that he thought it was illegal under the CSA itself. But you have to leave open the possibility that the jury can, in a case like this, say, actually, no, the evidence doesn't show that he believed it was unlawful under the CSA, because he looked at the schedules, and he quite reasonably believed that if they weren't on the schedules, they weren't illegal. I mean, I will acknowledge, the only reason that they are illegal if they're not on the schedule is the existence of the Analog Act. And I will acknowledge that prior to this case, I didn't know about the Analog Act. And I think a lot of people didn't. In the community where my client was selling these things, these things were being sold openly in delis and gas stations. They were being advertised in local newspapers and magazines. And that's, I think, consistent with the fact that lots of people entertain the incorrect notion that if something's not on the schedules, then it's legal to sell. And somebody who is ignorant of that. Scalia, and you don't defend that, right? I mean, ignorance of the law is no excuse. It's no excuse. Scalia, even though you're totally ignorant that it's on the Analog Act, if you know the chemical composition and it happens to be on the Analog – covered by the Analog Act, they got you, right? Now, I – let me try to make clear my position. We agree that if the government can prove that you have the factual knowledge that the chemical has the characteristics that make it an analog, ignorance of the law is no excuse. You do not agree – Wait, wait, wait. What does that mean? So – I know all of the chemical characteristics, okay? I have to, in addition, know that those characteristics make it an analog? No. Okay. So there are three options. The one is that you propose they know the name of the substance. Right. You reject that. We don't think that's enough. Right. If they know that the substance is chemically substantially similar to a controlled substance, then they know the fact that makes its possession unlawful under that prong, they have to know as well that it's substantially similar in represented actual fact. Well, suppose – I mean, I'm not a chemist. I don't know that it's substantially similar, but I do know what the chemical composition is. I have to, in addition, know that that chemical composition is substantially similar. I don't think so. Yes. I think if I know the chemical composition and, in fact, that it's substantially similar. Well, I think we disagree about that, but if you take that view, we still win this case, because there's no evidence that Petitioner knew anything about the chemical structure of what he was selling here. I assume your argument is simply that it's a kind of coincidence. You have to know that this substance is an analog, and there are two ways you could know that. One way you could know it is you could know what the chemical composition of this is and what the chemical composition of, say, cocaine is. That would be one way. Very few people other than chemists know that. Then there is a second way you could know. The second way you could know is that you know that it is forbidden by a law which has the title forbidding analogs. And if you happen to know that it falls within that, of course you know it's an analog,  And those are the two ways. Yes. And no one's been able to think of a third. And ignorance of the law as no excuse has nothing to do with this case. This is just a coincidence that those are the two ways you could know it was an analog. Well, I certainly agree that those are the two ways that you can know it is an analog. And I don't think that the government can even argue that it satisfied that burden in this case, much less that the jury would have been compelled to find that harmless beyond a reasonable doubt. But you say that the government has to prove knowledge of two chemical compositions, the chemical composition of what is being sold, but also the chemical composition of one of the items on the list of controlled substances. Yes. Yes. That is our position. And that's the government's theory. Only if the government goes that route rather than the route of just saying you knew it was an analog. That is correct. And, you know, I will acknowledge that going the knowledge of identity route in an analog case is going to be difficult for non-chemists. But I think it's difficult for reasons that should not give the Court pause, which is simply that it's difficult for somebody to know, even if they know what the law is, whether what they're doing is illegal or not. And so, you know, our theory has the benefit of avoiding entirely the vagueness problems that we think are inherent in this statute. Was there enough evidence in this case to go to the jury under the instruction that you want? Yes. I will agree that there was. And so the only question here is whether there should be a new trial under which we can have another discussion with the district court about what the proper instructions are. I don't think we will have a lot of disagreement about that. Or whether the court should instead hold that the error is harmless. And it would be exceedingly unfair to do that in this case on the ground that Petitioner didn't present sufficient evidence to rebut a theory the government wasn't making at trial. That's why we have and why we enforce forfeiture rules. And this Court could, I think, quite easily resolve this case by saying, as Justice Barra did, here's the legal rule. There are the two ways in which this can be proven. But the government in this case, to the extent it has some special new theory about illegal under some other law, has waived that argument by failing to preserve it. If I could reserve the remainder of my time. Thank you, counsel. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. I find Mr. Russell is almost correct about the extent of the disagreement that's left in this case. Our position is not that we can prevail if we can prove that a defendant believed that his conduct was illegal under some law other than the CSA or the Analog Act. Our position is that we can prevail if we can prove that a defendant knowingly distributed a drug and that he believed that his conduct, that his distribution of the drug, was illegal generally. As Justice Sotomayor has raised. My question is that I posed to him is really for you. Would you mind repeating it? Well, I'll try. Suppose you have to show, and I think you do, that the defendant did know it is an analog, say, to cocaine. There are two ways you could do that. The first way is you could show that this defendant, being a graduate in chemistry, knows what the chemical composition of cocaine is, knows what the chemical composition of this other substance is, and knows they are the same. You're not going to be able to do that very often. Another possibility is you could show that he knows that this particular substance is banned by a law that is called the Analog Act, because obviously if he knows that it is banned by the Act that bans analogs, it must be an analog. Those are two ways you could prove knowledge. To prove that it is banned by the Anti-Turkey Shoot Act proves nothing about his knowledge that this is an analog, and therefore, once you say, as you are trying to say, I think, that some other illegality is enough to convict, I no longer understand the argument. Well, the argument, as Justice Sotomayor pointed out, in the real world, defendants don't tend to know specific provisions of Federal law or State law, but they do tend to know whether what they are doing is illegal or not. And so our view is that the knowing or intentional standard in Section 841a describes a culpable state of mind, and one way to prove that culpable state of mind is to prove that the defendant knowingly or intentionally engaged in the act. Breyer. Yes, but then you are saying the defendant does not have to know it is an analog, and that, I think, you don't want to say. Because you could think it was banned by some other act, and that would make you know that it is that thing that the other act bans. It doesn't tend to show it's an analog. Well, what I'm saying is defendants tend to believe that what they are doing is illegal, not under any particular provision, but just generally they believe it's illegal. Scalia. That's not what the statute says. The statute doesn't say knowingly be a bad guy. It says knowingly manufacture, distribute, or dispense a controlled substance. That's what the knowingly applies to. So you have to know that it violates that law, not just know that you're a bad guy. That doesn't do what it says. In almost every context, the easiest way to prove knowledge of this kind of statute is to prove that a defendant knew the facts that made his conduct illegal. But what the knowingly doesn't do is prove the facts. It doesn't have to have any awareness of the statute, but if he knows all the facts, which in this case would include knowledge of the chemical structure and pharmacological effects, that's usually in other contexts the easiest way to prove knowledge under this kind of statute. In this context, that's not the easiest way. And we think there is another way. We think the knowing or intentional standard described is a culpable mental state. And this Court has said that that's to prove knowledge, you don't always have to prove that the defendant knew all the critical facts. Ginsburg. How do you answer the Cuban cigar that turns out to be filled with marijuana? Well, I guess our primary submission is that it's sufficient if the government proves that a defendant distributed a drug and that he believed that doing so was illegal under some drug law, that he knew it was some kind of illegal drug. We think it would be good. It has to be under some drug law. You didn't say this before. I don't think your brief said it. It has to be illegal under some other drug law. Well, let me just point out, the reason there's maybe not as much explication in the briefs is because there's a fundamental disagreement that became clear in the reply brief that we disagree with the Petitioner about what the courts of appeals have done in the CSA context, and I can get to that in a second. But we think certainly it's sufficient if a defendant believes that what he's doing is illegal under a drug law, that he's distributing an illegal drug. We think it would be consistent with sort of broader principles if the Court held more broadly than that, that he believed that his conduct was illegal generally. You don't need to go that far in this case. The breadth of that hasn't fully been briefed in this case. Roberts. But the problem, I mean, that highlights what I think is the practical difference here. You've got a defendant who is obviously knows something's out there. He's trying not to do something, whether it's not to violate the CSA or whether it's not to violate anything. And you just want to be able to show to the jury, look, something's bothering him. He knows that something's afoot. And that's all you want to have to prove, as opposed to he knows he's violating either the CSA or a drug law. And I just don't know how that works. I understand how that works in this case, because you just say to the jury, look, he's checking the schedule every day, he's doing this, he's doing that. But I'm a little concerned about extending that as a general matter, where it doesn't have to be the law in question. One, because I think usually it's not a question whether you know anything about the law at all. It's simply whether you know a question about the facts and whether that happens to bring it under the law. But then I don't know how broad the principle is that you just have to know what you're doing is — would raise a doubt in the jury's mind about whether you knew it was legal or not. Well, so I have two types of responses, which I'll just point out so that I can come back to them in case I don't get through them all. The first is a doctrinal point, and the second, I can give you sort of a real-world example of how this works in the CSA context. The doctrinal point is that this Court has held that there are other ways to prove knowledge other than that a defendant actually knew a critical fact. For example, the government can prove willful blindness. And the Court has explained, as recently as the Global Tech case, that the reason you allow willful blindness to substitute for knowledge is not because being willfully blind to a fact is the same as knowing the fact. It's because a person who is willfully blind to a fact has the same culpable state of mind as a person who knows the fact. And so we must admit that a person who engages in an act intentionally and correctly believes that doing that is illegal is at least as culpable, if not more culpable, than the person who knows all the facts that make his conduct illegal. And so the real-world outcome is that the defendant is not going to be able to prove  Sotomayor, I thought it was violating a sales tax law, and you're going to send him up the river for 15 years. Well, again, we believe that he's just as culpable. We don't think the Court needs to hold that in this case. We think certainly it's sufficient if the government can prove that the defendant knowingly distributed a drug, believing it to be illegal to do so. Whether or not he knew what provision of law. Breyer. It's illegal because, in fact, it's bad for animals, and the law involved prevents veterinarians from using this kind of drug for animal treatment. That's all he knows. That's all he thinks. Now, he's guilty of this statute. That doesn't tend to show at all that knowledge, that he knows it's an analog. But in your view, because he feels guilty, as perhaps he should, he's guilty of violating this law. Well, we do believe that that would establish the necessary culpable state of mind. But, again, the Court doesn't really need to prove that. Breyer. Can you give me any authority for that? I mean, your example of willful blindness is an example of where, in fact, in respect to this law, he knows there is a risk he is violating, doing the conduct that it forbids. He knows there is a serious risk, and he pays no attention to that at all. Well, we do think it's fine. That's not a very strong analogy, I don't think. Well, but I think what it shows is that you don't have to prove actual knowledge of a fact to satisfy a knowledge standard in a statute. And, again, we think it would be perfectly sufficient for the Court to hold in this case that when the government proves a defendant is distributing an illicit drug for human consumption and he believes that what he's doing is illegal and he's correct about that, then that is enough to satisfy the CSA or the analog act. Well, it might be, except that there is some evidence in this case different than what you're saying. He checked, according to his brother, the Controlled Substance Act, didn't see this listed, and also when he was told something was illegal, he flushed it down the toilet. So why isn't – why don't we leave this to the Court below to figure out whether the error was harmless or not, given the evidence in the case? I certainly acknowledge that that is the Court's usual practice, to remand for application of a harmless error standard, and we wouldn't have any problem with the Court doing that here. We do think the evidence that you point to tends to show that he may not have believed he was violating the CSA specifically, but he – there's plenty of evidence to show that he knew and correctly believed that what he was doing was illegal. He sold his products in little baggies and vials. I'm sorry. He has to know that it's a controlled substance. He has to know that it's a controlled substance analog. Where we differ is how you prove that. Sotomayor, I don't believe in an analog, because plenty of people sell things thinking it's maybe cocaine, but in fact it's crack. Or they sell something else, thinking that it's a different drug. They just know it's a drug. We totally – we are 100 percent on the same page as you. I think Petitioner believes that you have to – When you keep saying he has to know it's an analog, I think that's wrong. He just has to know it's a controlled substance. But it – I mean, but by controlled substance, what we don't mean – this is where we differ with Petitioner – we don't mean that he has to know that it's illegal under the Controlled Substances Act. That's Petitioner's position. That's not our position. Is this a real-world problem? This sounds to me like the most artificial distinction that I've heard in a long time. Is there – does Virginia have an analog act? This is from Virginia, right? Yes. Does Virginia have an analog act that's different from the Federal Analog Act? I do not know that, the answer to that question. Do the States typically have analog acts, period, or do they have analog acts that are different from the State analog acts? I mean, all of these cases, unless the case involves a chemist, your proof that a person knew the thing was an analog is going to be that this person engaged in all kinds of furtive conduct to try to hide it from law enforcement. And so it's going to be for the jury to determine, based on circumstantial evidence, whether the person knew that this thing was illegal under some law. And if it's not the Federal Controlled Substances Act, I don't know what act it's going to be. The defense is going to be, well, you know, I knew that it was illegal, but I thought it was illegal under the State analog act. It wasn't illegal under the Federal Controlled Substances Act. Is that what we're worrying about here? I think that sort of gets to the point. I mean, the way you sort of characterize what might be the right instruction, that you have to prove that the defendant knew it was or believed it was illegal under some drug law, we're fine with that. I think Petitioner would like the instruction to be that you have to prove that the defendant knew it was illegal under the Controlled Substances Act or under the analog act. Alito, the question I'm asking, a practical question, is we've got the Federal Controlled Substances Act, the analog provision. What is this other body of law that might come into play here? Well, I'm not sure there is one, but I think our point is that most defendants aren't aware of any body of law, right? They just know that what they're doing is illegal. And so we shouldn't have to prove that he had a specific, a specific statute of conviction in his mind. Ms. Harrington, I mean, I take your point that this is going to have a very small practical effect in terms of what either the prosecutor or the defense attorney is putting on at trial. But it actually seems to me to be a real theoretical difference, which has implications far beyond this case, that what Mr. Russell has suggested is two ways of showing that a defendant knew a fact, that the fact that he was distributing an analog. And you might know it because you know the chemical structure and all its properties, or you might know it because you know, you know, somebody has given you a box and said this is an analog prohibited under the analog act, and so you know that it's an analog. So those are two ways of knowing a fact. But you're saying that in addition to knowing a fact, the mens rea is satisfied if you can just show that the defendant knew he was acting culpably in violation of some law. And that, it seems to me, is a theory that could be put onto any law, that in addition to knowing all the facts that a statute says you have to know, the government has an alternative way of proving its case, which is just to say, oh, look, look, you were acting culpably. You knew you were doing something wrong. Yes. And again, you know, we would embrace a narrower articulation in this case of what your knowledge of illegality has to be. If you know you're violating a U.S. drug law or you know you're distributing an illegal drug, we think that's sufficient. Suppose he thought that there was a labeling law and he was violating the labeling law. He's wrong. There is no labeling law, but it violates the analog act. Guilty? Under our view, that would be sufficient. We don't think the Court needs to reach that in this case because there's no suggestion that he, that his belief in illegality was that he was doing anything other than violating a U.S. drug law, but he was violating some U.S. drug law. So just to clarify, you are saying it's not just any illegality, it has to be an illegal drug law that's a qualification? We're saying at least for the purposes of this case, that is sufficient. What do you mean by purposes of this case? What is the law generally? Must it be a drug law or could it be any law? Well, we think it's consistent. Why don't you give it up, Ms. Harrington? Let me just try one more time. We think it would be sufficient. It would be consistent with the way this Court has treated other mens rea issues such as, you know, a willful standard. You've got the willful. I don't think the problem is with your articulation. I think the problem is we're sitting here thinking of examples like, you know, there's an anti-bird hunting statute and it says you cannot hunt green-eyed turkeys, you know, and the guy's never heard of that. You say, okay, I don't know if this is a green-eyed turkey and I don't know if it violates the green-eyed turkey statute, but maybe it violates something, you know. And that sounds like an odd principle, even if you limit it to all laws concerning birds. And you see the problem? And I suddenly worry the government's going to start there. They see he's skulking around in the bushes, you see. And we could go on like this, but I think I'd better not. So I think that has not turned out to be a real-world problem. And I certainly understand the Court's concern, and I'm not trying to sort of blow it off or avoid answering it. I do think in the willful context that that has the Court in Bryant said that's sufficient. If the defendant correctly believes that what he's doing is illegal, he doesn't have to have any sense of what law he's violating. Now, willfulness is generally thought to be a much higher mens rea standard than knowing or intentional. And although this Court has never addressed this precise question, both the Model Penal Code and the Brown Commission Report have embraced the idea that when you satisfy a higher mens rea standard, you necessarily satisfy all the lower ones. Having said that, I understand the Court's concern, and I don't mean to interrupt you, Mr. Chief Justice, and so we are embracing a narrower articulation for the purposes of this case. Roberts, you say you're embracing the narrower articulation, but it seems to me that's just a case-specific one. Justice Alito's right. It's hard to see how that would make a difference here. But I think it could make a world of difference when you expand that to the other cases involving mens rea. And when you get to that point, it is sort of an ignorance of the law question. I mean, in all the cases involving mens rea, we do not ask whether you have any idea whether it violates the law or not. And your position makes it much easier to convict people because you don't have to show that they even knew the facts that made their conduct illegal. All you have to do is say that under illegal under the law that they're being charged. All you have to do is say they did something that makes it look like they knew that they did something that makes it look that they were suspicious. And if we can find any law in the United States Code that makes what they did illegal, we can prosecute them for what we want to prosecute them for, even though they didn't know that the facts fell under that provision. Well, you have to prosecute them for the actions they actually took that broke the law. Yes. And part of that prosecution is you must show that they had the requisite mens rea. Yes. And what you're saying is we can show that simply by showing the jury that they were acting suspiciously. I mean, I don't think that's quite correct. We have to convince the jury that the defendant in any case believed that what he was doing, that the relevant conduct, which in this case would be distributing the drug, violated the law, was illegal. You have to prove that beyond a reasonable doubt. And so just merely suggesting to the jury that a defendant was acting suspiciously I think is not going to get the job done in most cases. And I do think in most contexts it is easier to prove that a defendant knows the facts that make his conduct illegal than it is to prove that he knew what he was doing was illegal. Kennedy, what's the best case you can give us to help? In Morris, the defendant didn't know that the surplus shell casings belonged to the government. And he was exonerated because he had to have an intent. Suppose that he didn't know they belonged to the government, but he thought that it was an illegal casing because it was dangerous. And he was wrong about that, but it did belong to the government. Could he be prosecuted then? We think he could be. I mean, I think all of the cases in that line, the Morris, Staples, all those cases involved defendants who claimed that they genuinely believed what they were doing was innocent. And so the problem for this Court was to try to figure out a way to construe the statute so that it didn't sweep in people who really were innocent. Now, this is a case where the case you have. So the easier cases are where the defendant really truly believes that what he's doing is illegal, and those cases tend not to come to this Court. There are some statements in the opinion in Bryan. Now, Bryan was principally a case about a willful standard, but there was also a discussion of a knowledge standard. And in Bryan, the Court said the government doesn't necessarily have to prove that a defendant knew what he was doing was illegal. And I think the use of necessarily there suggests, at least, leaves open the possibility that if the government did prove that, then it would be sufficient. The Court also said the court also said in Bryan that the defendant, that the government merely needs to prove knowledge of the facts that make his conduct illegal, suggesting that that's an easier standard for the government to meet. Roberts I'm sorry, just to follow up quickly on Justice Kennedy's hypothetical. What if he knew he was trespassing when he went on to the government property and took the casings? You have to show he knew what he was doing was illegal. He was trespassing. The sign said government property. And so we can convict him for taking the shell casings. Saharsky Well, we would tie it more directly to the conduct that actually violates the law. And so if he needs to know that the taking of the shell casings is illegal, not that some ancillary conduct that, you know, brought him to the shell casings was illegal. And so here we would say, again, he needs, the defendant needs to know that the distribution of the drug is what's illegal. And we think, you know, if you look at the, I think we're on the same page with Petitioner in suggesting that the same standard should govern both CSA cases and analog cases. We just disagree about how the courts of appeals have applied this in the CSA. Alito Let me try this out. We'll go, start with a drug that is on the list, all right? The defendant knows the chemical composition of the drug that's on the list. The defendant has no idea that this is on the list, knows nothing about the Federal drug laws. The person distributes it intentionally, knowingly. That person has violated the law. The person's ignorance of the fact that this is a controlled substance is irrelevant. Are you, am I right so far? Saharsky Yes, because he knows the identity of the drug. Alito He knows what it is. He knows the chemical composition, he knows the name. All right. Now, let's assume we have a list of analogs. It's the same thing. If the defendant knows that the thing is on the list, knows the chemical composition of it, and it turns out that this is an analog, that is sufficient. That's not going to be the proof in most cases. I think maybe the confusion is that a defendant's knowledge of the illegality of what he or she is doing is not something that has to be proven. It is circumstantial evidence that the person knows that the thing that is being distributed is something that is on the list. Saharsky Right. Now, again, there's no list in the analog context. Alito I understand that, but it makes it easier to understand if we imagine that there is. Saharsky Yes. So, no, we agree. Our position is that if we can prove that a defendant knew what he was doing was an analog, that's a way of proving that he knew he was distributing a controlled substance analog or a controlled substance. Alito But it's not something that you have to prove. You don't have to prove that he knew that it was illegal under Federal law or under State law or under any other law. You have to prove that he knew that it was a substance that constitutes that in fact constitutes an analog. But the fact that he knows that it's illegal under Federal law is circumstantial evidence that he knew that it was something that fell within that definition. Saharsky Yes. And it might help if I could give you sort of a real-world example of how this has worked in the courts of appeals under the CSA. There's a number of cases in the courts of appeals dealing with a substance called cot, which is K-H-A-T. Cot is a plant that's grown in the Horn of Africa generally, and if you pick the leaves off the plant and chew them, it gives a stimulant effect. And the reason it gives a stimulant effect is because fresh leaves of cot contain a substance called cathinone, which is a Schedule I substance illegal under the CSA. It sort of produces amphetamine-like effects. So cot is legal in many places in the world. It's illegally distributed in this country because, again, it contains, when freshly picked, contains a Schedule I controlled substance. So the number of cases where the government has prosecuted people under the CSA for distributing cathinine in the form of distributing cot, and defendants in those cases have said, look, I didn't know it had cathinine. I was just distributing cot. It's legal where I come from. I have no idea what the chemical is in this plant. And the courts of appeals have generally upheld those convictions based on proof or when there is proof that the defendant knew that distributing the cot was illegal, even if he didn't know why it was illegal, even if he didn't know why it was illegal. Breyer, the light is dawning slightly, maybe. Don't say I'm stating your argument correctly if I'm not. Okay. All right. So you're saying, first, he doesn't know the chemistry. So he doesn't – he has to know it's an analog. But he doesn't know the chemistry. Now, you're saying, of course, if he knows that it is illegal under the Analog Act, that's good enough because he knows it's an analog. Yes. Now, you're saying, if he knows it's illegal generally under the drug laws, that should be evidence of the fact that he knows it's an analog, because let's ask him, well, why do you think it's illegal under the analog? I mean, why do you think it's illegal under the drug laws? I'm going to tell you it's not a listed substance. Why could it be? And he'd sort of be stuck there, because he doesn't want to say, because it's a lot like cocaine. Right. Because once he says, because it's a lot like cocaine, he knows it's an analog. And if you say, using my, you know, far-out examples, it's not because he thinks it's a veterinarian law. So what it should be, is this right, if I follow your argument, you'd say the fact that he knows it's illegal under the drug laws is itself evidence that he knows it's an analog, but he's free to come up, if he wants, with some kind of basis for saying that even though he thought it was illegal under the drug laws, he thought it was illegal under some other law that had to do with postage stamps or something. That should be, if the jury believes that, get him off. If I got it basically right. That's a correct characterization of our narrower argument, yes, that if, right, if we can prove that the defendant believed what he was doing violated some drug law, that's enough to prove that he knowingly distributed an analog. Ginsburg. What would some drug law be other than the CSA and the Analog Act? In the Federal context, there wouldn't be, but again, our point is really that the defendant generally does not have a specific law in mind. He just knows that what he's doing is breaking the law. And so when Petitioner says we have to prove that he knew he was violating the statute of conviction, we think that's a much too high a burden. The only time you have to do that is when you have a willful standard in the tax evasion context, right? This is certainly not that context. We think just general knowledge of illegality and intention to engage in the prohibited act is sufficient. Ginsburg. But the illegality must relate to drugs. Pardon me? The illegality must relate to drugs. We think that's certainly sufficient when the government proves that, that the illegality relates to drugs. And sufficient is not just evidence that he knew it was an analog. It's conclusive evidence.  And, you know, Petitioner suggests that the court's law. So even if he comes back and says, yes, I thought that what I was doing was wrong, but it wasn't because I thought this was an analog. It was for some other reason. Well, we think if he came back, for example, and said, well, I thought it violated the Virginia Controlled Substances Act, and because not some States control more drugs than the Federal, than the Federal schedules include, but I didn't know it violated a Federal drug law, we think that would not be a defense, right? That some knowledge that you're violating a drug law is sufficient. You know, and we think in this case there is actually — You said sufficient. How about necessary? Is it necessary? Is the drug, is the law that he thinks he's violating, the drug law, is that necessary? So, again, we think that there's a — that a broader view would be correct, but we are perfectly happy with the ruling in this case that it would be sufficient that the government — we don't think that there's necessarily a basis for limiting the knowledge of illegality specifically to drug laws. As long as you tie the conduct to the belief in illegality, we think that's enough. But we think it's definitely sufficient for this case to hold that when the government proves a belief that he's violating a drug law, that that's enough. So the conduct is related to the genus of illegality. Right. I think — I think there are areas where criminal defendants do try to tailor their conduct to fall within if they're captured and caught particular laws, but not others. I recall cases where that's true. I mean, hypothetically, let's say they know that this much marijuana or cocaine is a misdemeanor. If they get up to this much, you know, it's 15 years' mandatory minimum, so they structure their activities to fall within the lower level. You would be able to prosecute them, according to your theory, for the big 15-year mandatory whatever if they happen to go beyond the misdemeanor amount. Certainly, yes. If a defendant believed that he was distributing one pound of cocaine, and it turned out — and that's probably, you know, I don't know what the right numbers are, but say he was believing he was distributing one pound of cocaine, it turned out he was distributing five pounds of cocaine, and there's a different sentence that applies for five pounds. If we can prove he actually distributed five pounds of cocaine, then I think that would be sufficient under the control of the defense. Roberts. Well, but what does that do to your theory that they have to — what they have to know is that it's illegal under the drug laws? What was illegal, what they knew was the misdemeanor amount, and you say, well, that doesn't — it doesn't matter that they — doesn't matter that they didn't know they were distributing the larger amount. I took your hypothetical to be that he knew what he was doing was illegal. He just— What he was doing was an — was a misdemeanor. Okay. Because of the amount. He didn't know it was going to be a felony because he didn't know he had that much of the drug. Well, under our view, if he knew what he was doing violated a drug law, which I think wouldn't be the case in your hypothetical, then that's sufficient. Now, of course, if he thought what he was — what he was distributing was oregano and it turned out to be marijuana, then we think that wouldn't be sufficient because he would have believed what he was doing was innocent and he wouldn't have known the facts that made his conduct illegal. In this case, there are — there are plenty of facts to show that Petitioner really believed that what he was doing was illegal and it turned out that he was correct. Again, he sold his products in little baggies and vials instead of having sort of more traditional commercial packaging. He charged $450 an ounce for these products, which sort of undercuts his belief that he thought that they were aromatherapy products or things that you would actually pour into a bathtub. He named the products — Scalia, you know, you charge what the market will bear, and if it has the same effect — Scalia, if it has the same effect as cocaine, even if it's perfectly legal, you should charge $400. Don't you believe in the free market? Not in the illegal — I mean, you know, the free market works in the illegal drug context the same way it works everywhere else. But I think it's certainly evidence that he knew what he was selling was a drug, and it was an illicit drug. I mean, he named the analogues after — Scalia, all it shows is that he knew it would give you a high, that's all. And so he was charging what people are willing to pay for that. He also acted furtively. You know, he sort of hid his products on his website. He wouldn't answer direct questions from his customers about which high, you know, it was most like for the controlled substances. And so we think there's certainly sufficient evidence to show that the Petitioner in this case believes that it's not a — Kennedy, but the Petitioner's counsel agrees that there's sufficient evidence to convict under a proper instruction. Yes. I mean, I think he has a different view of what a proper instruction is. And so, again, I understand that the Court generally remands for application of harmless error. We think that would be appropriate in this case, particularly because the government didn't ask for this instruction because it was following a circuit precedent below and then defending a harsher instruction that was actually given in the case. Ginsburg, but how can we — when a jury is told that human ingestion is enough, he has to — he has to intend that this — these bath salts are not to put in the bathtub but to ingest. That's all that he — that was the only mens rea that was charged, isn't that so? It was not the only mens rea that was charged, Justice Ginsburg. That was the mens rea instruction that the government requested because that was what circuit precedent had said was enough. But the instruction that was actually given told the jury it had to find that he knowingly distributed a controlled substance — a substance that had the same pharmacological effects as a controlled substance. Thank you. Thank you, counsel. Mr. Russell, you have four minutes left. Let me start with the instruction. Justice Ginsburg, even under the government's interpretation of the jury instructions as requiring the jury to find that the defendant knew about the similarity in effect, the government acknowledges it didn't require any knowledge about the similarity in structure. And so the government has acknowledged that this — that the instruction here was inadequate even under the government's new view of the law. And so the question here is simply whether or not they're entitled to take advantage of that and to make a harmless error argument based on a theory that they only developed in this Court. But let me — with respect to the general legal questions, let me start with — with addressing their broad any law will do position. And that is something, as I understand them now, premised on their thought that all the statute requires is culpable state of mind. But that's not what the statute says. It doesn't say distribute an analog culpably. It says distribute knowingly. And this Court has repeatedly said that knowing distribution of a prohibited item requires knowledge of the facts. And there may be an exception that we've discussed that you can meet that by showing that there's knowledge under the law of conviction itself, but there is no precedent from this Court that gives the Court — that gives prosecutors the option of either proving the facts, the defendant knew the facts that made the conduct unlawful, or simply that he acted culpably or that he knew that the conduct was unlawful under some law. Now, with respect to their fallback position that it has to be illegal under a drug law, we're getting closer. We would agree if they were to say, as some courts have said, including Hussain, which is a case they feature prominently in their brief, that it has to be a Federal anti-drug abuse law. Now, the truth of the matter is there's only one of those, but the value in that articulation is that it makes clear that the defendant doesn't have to know the name of the statute. But if the government's position is that it's enough that it be under State drug abuse laws — and, Justice Alito, there are lots of State analog acts, and there are lots of States that have been ahead of the government in putting on their schedules things that are analogs, including some of the substances in this case — that's And it's up to Congress to decide what is culpable enough. And when it uses the word knowingly, it's entitled to know that that word is going to give the same interpretation that it has in the past. The government points to cases like Bryant, in which the Court has said, in addition to knowing the facts, you must also know something about the law. And it says that, you know, willfulness is enough to establish knowing — a knowing distribution. But, of course, in those cases, it's not simply that they have some general knowledge of unlawfulness. They also know the facts that make the conduct unlawful. Alito, who knowingly distributes heroin, knows that it's heroin, doesn't have any idea that it's illegal, nevertheless has violated the law. Now, I don't see why the rule should be any different with respect to an analog. I don't say that it is. I think they have — they can either — So then the defendant doesn't have to know the legal status of the drug. Again, we're talking about the government's alternative there. The government always has the option. I'm sorry, if a State law calls it an analog, and he knows he's violating the State law, he knows this is an analog. Well, if he knew that he was violating a State analog act that had the same definition under Federal law, I think you could then ask the jury to infer that he knew that he was violating the Federal law. But most of the time, as my colleague said, the government's evidence is simply going to be that the defendant knew that the conduct was unlawful somehow. And the jury isn't entitled to that. I'm not sure that you've answered Justice Alito's question fully. I'm sorry. He — he — So — Go ahead. So, Justice Alito, the government never has to prove the defendant's knowledge about the law at all if it proves that he knows the facts that make the conduct unlawful. And so what we're objecting to is the government's alternative route to showing mens rea. And we agree with them up to the point of the fact that they think that it's enough to show that the defendant knew he was violating some State law or perhaps some provision of the FDA which regulates substances independent of the Controlled Substances Act. As a practical matter, in most cases, what the government — the proof is going to be what the government described, which is simply that the defendant engaged in some furtive conduct that suggests that he knows that the substance is illegal. And unless the defendant comes forward with some reason for the jury to think that, in fact, he had in mind that it violated some other law or, in fact, that he looked and came to the conclusion it doesn't violate the Controlled Substances Act, then the jury is very likely to find mens rea established, and we don't have any problem with that. In this, just to finally address the facts of this case, the fact that my client was distributing things in baggies rather than vials shows that he was doing this from his home business. The fact that he was charging large prices shows that he thought he had found a loophole in the Federal drug laws. There is no reason in the world why he would have, if I could finish the sentence, why he would have flushed his product down the toilet when he discovered it contained a substance that was on the schedules, if, in fact, he knew that the other products also were illegal in DUNCARE. Roberts. Thank you, counsel. The case is submitted.